UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WILLIAM ADLER, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
|  | ) | Civil Action No. 05-0003 (ESH) |
| VISION LAB TELECOMMUNICATIONS, INC., *et al.*, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

William Adler and five other plaintiffs allege that they received unsolicited and improperly identified faxes from Vision Lab Telecommunications, Inc. and eight other defendants in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Counts I and II), and the District of Columbia Consumer Protection and Procedures Act ("DCCPPA"), D.C. Code § 28-3904 (Count III). Plaintiffs also claim that defendants are liable for the common law torts of negligence (Count IV) and invasion of privacy (Count V). Defendants have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), arguing that plaintiffs have failed to state a claim for each of the five counts.

**I.   Standard of Review**

The standard of review under Rule 12(c) is essentially the same as that for a motion to dismiss under Rule 12(b)(6). *Jung v. Assoc. of Am. Med. Colleges*, 339 F. Supp. 2d 26, 35-36 (D.D.C. 2004). Thus, dismissal is appropriate only where a defendant has shown "'beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief.'" *In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1442 (D.C. Cir.

Case 1:05-cv-00003-ESH   Document 67   Filed 10/17/05   Page 2 of 11

1989) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1955)).  The allegations in plaintiffs' complaint are presumed true and all reasonable factual inferences should be construed in their favor.  *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 968 (D.C. Cir. 1979).

**II.     TCPA Claims**

The TCPA prohibits the transmission of unsolicited fax advertisements and of faxes that do not contain certain identifying information.[1]  47 U.S.C. §§ 227(b)(1)(C), (d)(2).  Count I alleges that defendants violated the TCPA by sending faxes to plaintiffs "without prior express invitation or permission" (Am. Compl. ¶ 55), while Count II alleges that defendants violated the TCPA by failing to provide proper identification.  (*Id.* ¶ 58.)  Defendants argue that these counts must fail because no private right of action exists for either of these violations.

**A.     Count I:  Unsolicited Faxes**

Under the TCPA, a recipient of an unsolicited fax may assert a private right of action in state court [2] if "otherwise permitted by the laws of a State."  47 U.S.C. § 227(b)(3).[3]  Courts

---

[1] Specifically, the TCPA prohibits the transmission of unsolicited advertisements through the use of a fax machine or computer unless the advertisement is from a sender with an "established business relationship with the recipient" or the sender received the phone number voluntarily from the recipient.  47 U.S.C. § 227(b)(1)(C).  It is also unlawful for a person to send a message via fax that does not identify the date and time it is sent, the sender, or the sender's phone number. *Id.* § 227(d)(B).

[2] While a TCPA claim does create federal subject matter jurisdiction for a private litigant, the Court's jurisdiction in this case is based on diversity.  (*See* Am. Compl. ¶¶ 1-8.)  *See also Kopff v. World Research Group*, 298 F. Supp. 50, 55 (D.D.C. 2003) (recognizing diversity jurisdiction over TCPA unsolicited fax cases).

[3] In relevant part, § 227(b)(3) provides that:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--

interpreting this ambiguous phrase have differed, with most concluding that the term simply "acknowledges the principle that states have the right to structure their own court systems and that state courts are not obligated to change their procedural rules to accommodate TCPA claims" or that a private right of action exists as long as a state has not "opted out" of the federal scheme, although others have found that no right exists unless a state has affirmatively "opted in." *Schulman v. Chase Manhattan Bank*, 268 A.D. 2d 174, 179 (N.Y. App. Div. 2000).

For example, in *Portuguese-American Leadership Council of the U.S., Inc. v. Investors' Alert, Inc.*, Case No. 01-CA-3479 (D.C. Super. Ct., July 22, 2003), a D.C. Superior Court judge held that D.C. must "opt in" to allow its citizens a private right of action under the TCPA. Defendants argue that D.C. is therefore an opt-in state and, since it has not "pass[ed] legislation or promulgate[d] court rules consenting to state court actions based on the TCPA," plaintiffs' claim must fail. (*See* Defs.' Rule 12(c) Mot. for J. on the Pleadings ["Mot."] at 4 (quoting *Autoflex Leasing, Inc. v. Mfrs. Auto Leasing, Inc.*, 16 S.W.3d 815, 817 (Tex. App. 2000)).) However, more recent cases have disagreed with *Portuguese-American* and have rejected the opt-in approach. *See Adler v. Advanced Wireless Cellular Comm., Inc.*, No. 01-SC-12944 (D.C. Super. Ct. July 6, 2005) (rejecting the opt-in approach and finding that the D.C. Superior Court has jurisdiction over claims brought under the TCPA); *Morris v. Fax.com, Inc.*, No. 03-CA-1109

---

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

(D.C. Super. Ct. Dec. 19, 2003) (same); *City Lights Sch., Inc. v. T-Mobile USA, Inc.*, No. 03-CA-2780 (D.C. Super. Ct. Nov. 18, 2003) (same). The *Portuguese-American* decision also runs counter to state court decisions in California, Florida, Pennsylvania, New Jersey, New York, Missouri, Maryland, Georgia, and Texas, all of which have rejected the opt-in approach. *See Kaufmann v. ACS Sys. Inc.*, 110 Cal. App. 4th 886 (Cal. App. 2d. Dist. 2003); *Condon v. Office Depot, Inc.*, 855 So. 2d 644 (Fla. Dist. Ct. App. 2003); *Aronson v. Fax.com, Inc.*, 51 Pa. D.&C. 4th 421 (Pa. Ct. Com. Pl. 2001); *Zelma v. Market USA*, 778 A.2d 591 (N.J. Super. Ct. App. Div. 2001); *Schulman*, 268 A.D. 2d 174; *Reynolds v. Diamond Foods & Poultry, Inc.*, 79 S.W.3d 907 (Mo. 2002); *R.A. Ponte Architects v. Investors' Alert, Inc.*, 857 A.2d 1 (Md. 2004); *Hooters of Augusta, Inc. v. Nicholson*, 537 S.E.2d 468 (Ga. Ct. App. 2000); *Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 135 S.W.3d 365 (Tex. App. 2004). Nor has any federal appellate court ever adopted the opt-in approach. *See* Robert R. Biggerstaff, *State Courts and the Telephone Consumer Protection Act of 1991: Must States Opt-In? Can States Opt-Out?*, 33 Conn. L. Rev. 407, 415 (2001).

Given the persuasive reasoning of the many cases cited above that have rejected the notion that states must take affirmative action to provide their citizens with a forum for TCPA claims, the Court concludes that plaintiffs may bring an action against defendants for a violation of § 227(b).[4/] Defendants' motion to dismiss Count I will therefore be denied.

---

[4/] Defendants argue that, even if D.C. is an "opt-out" state, it opted out when it declined to create a private right of action for unsolicited faxes when considering another bill. (Mot. at 4-5.) Not only did this take place *prior* to the passage of the TCPA, but it does not constitute an affirmative decision to opt out of TCPA jurisdiction. *See, eg., Kaplan v. Democrat & Chronicle*, 698 N.Y.S.2d 799, 800 (App. Div. 1999) ("In the absence of a State statute declining to exercise the jurisdiction authorized by the statute, a State court has jurisdiction over TCPA claims."); *see also Condon*, 855 So.2d at 648 (finding Florida did not opt-out of the TCPA by passing a statute regulating unsolicited fax advertisements prior to passage of TCPA).

B.     **Count II: Improperly Identified Faxes**

Count II asserts a cause of action based on regulations promulgated by the Federal Communications Commission ("FCC") pursuant to the TCPA, which require that faxes properly identify the individual or entity sending the faxed message and the number of the sender. 47 C.F.R. § 68.318(d). Defendants contend the TCPA does not provide a private right of action for such a claim. Based on the plain language of the statute, the Court agrees. The private right of action established by § 227(b)(3) limits the right to "an action based on a violation of *this subsection* [*i.e.*, subsection (b)] or the regulations prescribed under *this subsection*." 47 U.S.C. § 227(b)(3) (emphasis added). The regulations cited by plaintiffs, however, were issued pursuant to a directive in § 227(d).[5] *See* Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg. 44144, 44170 (July 25, 2003) (citing § 227(d) as authority for 47 U.S.C. § 68.318(d)).[6] Section 227(b) deals with unsolicited faxes, not improperly identified faxes. A private right of action exists only with respect to the former. *See*

---

[5] Section 227(d)(2) provides that:

The Commission shall revise the regulations setting technical and procedural standards for telephone facsimile machines to require that any such machine . . . clearly marks, in a margin at the top or bottom of each transmitted page . . . the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual.

[6] The Federal Register notice states that the identification requirements "will permit consumers to hold fax broadcasters accountable for unlawful fax advertisements when there is a high degree of involvement on the part of the fax broadcaster," but does not suggest that the consumer should be able to hold fax broadcasters accountable merely based on a lack of identification. 68 Fed. Reg. at 44170.

47 U.S.C. § 227(d) (omitting any mention of a private right of action).  Thus, Count II must be dismissed for lack of subject matter jurisdiction.[7]

### III.  Count III:  D.C. Consumer Protection Procedures Act

Defendants argue that the Court should dismiss Count III because plaintiffs are not consumers of defendants' services (Mot. at 9) or, in the alternative, because plaintiffs have failed to allege any substantive violation of the DCCPPA.  (*Id.* at 10.)

The DCCPPA regulates transactions between a consumer and a merchant.  D.C. Code § 28-3904.  *See Indep. Commc'ns Network, Inc. v. MCI Telecomms. Corp.*, 657 F. Supp. 785, 787 (D.D.C. 1987) (DCCPPA "was intended to apply only to trade practices arising out of the supplier-purchaser relationship") (citing *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C. 1981); *see also Slaby v. Fairbridge*, 3 F. Supp. 2d 22, 27 (D.D.C. 1998).  A "consumer" is "a person who does or would purchase, lease (from), or receive consumer goods or services, . . . or a person who does or would provide the economic demand for a trade practice."  D.C. Code § 28-3901(a)(2).  A "merchant" is "a person who does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who does or would supply the goods or services which are or would be the subject matter of a trade practice."  *Id.* § 28-3901(a)(3).  The Act defines a "trade practice" as "any act which does or would create, . . . make available . . . or effectuate, a sale, lease, or transfer of consumer goods or services."  *Id.* § 28-3901(a)(6).  Finally, "goods and services" are defined broadly as "any and all parts of the

---

[7]Plaintiffs cite an unpublished case from a Missouri court, *Schraut v. Rocky Mountain Reclamation*, 01AC-002848 (Cir. Ct. of St. Louis County Dec. 18, 2001) (*see* Opp'n, Ex. 3), which held that the private right of action established by 47 U.S.C. § 227(b)(3) covers violations of 47 C.F.R. § 68.318.  However, in stating that "[v]iolations of the FCC's regulations are actionable under 47 U.S.C. § 227(b)(3)," the *Schraut* court did not analyze or even recognize the limitation in § 227(b)(3)(A) to "regulations prescribed *under this subsection*."  *Id.*

economic output of society, at any stage or related or necessary point in the economic process . . . ." *Id.* § 28-3901(a)(7).  A merchant need not be the "actual seller of the goods or services" complained of, but must be "connected with the 'supply' side of the consumer transaction."  *Save Immaculata/Dunblane, Inc. v. Immaculata Prep. Sch.*, 514 A.2d 1152, 1159 (D.C. 1986).  Thus, parties providing recommendations of the goods or services of a particular merchant to the consumer assume liability only when they are involved in supply side of the transaction.  *See Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 104-05 (D.D.C. 2004) (Antcliff's involvement beyond the recommendation of a particular contractor, in which he obtained supplies and contracts with vendors and agreed to oversee and monitor the contractor's work, placed him on the supply side of the transaction and within the scope of the DCCPPA); *Howard*, 432 A.2d at 710 (Riggs Bank employee's recommendation of a contractor to perform home repair did not fall under DCCPPA because Riggs was not a "merchant").

     Defendants argue that because plaintiff did not purchase, lease, or receive any goods or services from defendants, there is no consumer-merchant relationship, for "Defendants' own clients [whose faxes are transmitted by Vision Lab or who use Vision Lab's services to transmit their own faxes] -- not Plaintiffs -- are consumers of Defendants' fax transmission services." (Mot. at 10.)  Rather than addressing the issue of whether plaintiffs are indeed "consumers" of defendants' services, plaintiffs argue that Vision Lab has "the most direct contact with consumer," and therefore should fall within the DCCPPA's definition of a "merchant."  (Pls.' Resp. in Opp'n to Defs.' Mot. ["Opp'n"] at 12.)  They suggest that permitting "intermediaries" to avoid liability will allow "the actual vendors who engage in unfair or deceptive trade practices . . . to insulate themselves from liability."  (*Id.*)

Plaintiffs' argument is misplaced.  As long as an entity falls within the definition of a "merchant," the "actual vendor"-- whether it transmits its information through an "intermediary" or directly to the injured consumer-- will remain liable for DCCPPA violations.  Moreover, the issue is not whether defendants have had "the most direct contact" with plaintiffs (*id.*), but rather whether plaintiffs "purchase[d], lease[d] . . . or receive[d] . . . services" from defendants, D.C. Code § 28-3901(a)(2), which they have not.

As discussed above, there is a federal statute which allows plaintiffs to sue defendants for transmitting faxes without express permission. The Court sees no need to extend the already broad reach of the DCCPPA to allow plaintiffs to challenge conduct that is already covered by federal law.[8]

## IV. Count IV:  Negligence

To state a claim of negligence, plaintiffs must first identify a duty that defendants have breached.  *Jarret v. Woodward Bros., Inc.*, 751 A.2d 972, 977 (D.C. 2000).  In Count IV, plaintiffs allege that defendants violated a duty not to send unsolicited faxes to plaintiffs, a duty to check and verify the numbers to which defendants send faxes, and a duty not to call plaintiffs in the early morning hours.  (Am. Compl. ¶¶ 21, 63-64.)  Defendants contend that this claim duplicates Count I and "is based upon non-existent duties."  (Mot. at 13.)

---

[8] Given the Court's conclusion that there is no consumer-merchant relationship between plaintiffs and defendants, it need not resolve whether plaintiffs have adequately alleged a violation of the DCCPPA.  However, the Court notes that plaintiffs' concerns lie primarily with the *content* of the faxes, *i.e.*, the representations of defendants' *clients*, not defendants.  (Am. Compl. ¶ 38.)  While defendants may have provided the means for advertisers to get their allegedly deceptive messages to plaintiffs, "aiding and abetting" a DCCPPA violation is not a violation in itself.  *See Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.*, 832 F. Supp. 419, 425 (D.D.C. 1993), *vacated on other grounds*, 84 F.3d 1452 (D.C. Cir. 1996). *See also Howard*, 432 A.2d at 709 (individual's recommendation of another's services does not give rise to liability under DCCPPA).

Although a D.C. Superior Court judge refused to dismiss a negligence claim based on unsolicited faxes in *Morris v. Fax.com, Inc.*, No. 03-CA-1109 (D.C. Sup. Ct. June 13, 2003), stating that plaintiff would "have a difficult time proving that the defendants owed her any duty of care," whether a duty exists is a question of law. *Hoehn v. United States*, 217 F. Supp. 2d 39, 45 (D.D.C. 2002). Other than *Morris* (which contains no analysis of the issue), plaintiffs have not pointed to any authority that might support the existence of the alleged duties. These duties would arise only from the TCPA's statutory proscriptions and not from any duty recognized in the common law.[9/] Accordingly, Count IV must be dismissed. *Accord Chair King*, *Inc.*, 135 S.W.3d at 395-96 (sending unsolicited faxes does not give rise to a common law claim of negligence).

## V.     Invasion of Privacy (Count V)

Count V alleges that defendants' conduct was "an intentional intrusion into Plaintiff Adler's private place and affairs." (Am. Compl. ¶ 67.) To prove a tort of "intrusion upon seclusion,"[10/] plaintiffs must show, *inter alia*, that defendants' conduct would be "highly offensive to an ordinary, reasonable person." *Danai v. Canal Square Assocs.*, 862 A.2d 395, 399-400 (D.C. 2004) ("'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the

---

[9/] As defendant correctly argues, even assuming plaintiffs could prove a violation of the TCPA, this would not give rise to a claim of negligence *per se.* Under District of Columbia law, in order for a violation of a statute to be negligence *per se*, the statute must promote safety. *McCracken v. Walls-Kaufman*, 717 A.2d 346, 354 (D.C. 1998).

[10/] Although plaintiffs do not specify which of the four distinct torts covered by the term "invasion of privacy" they allege, they do not dispute defendants' assertion that the most plausible tort in these circumstances would be an "intrusion upon seclusion." (Mot. at 15 n.12; Opp'n at 13-14.)

other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'") (quoting Restatement (Second) of Torts § 652B (1977)).  Plaintiffs claim that "[d]efendants' repeated intrusions and conversion of Plaintiff [Adler]'s paper and toner and used [sic] of his machine, particularly at early morning hours, would be highly offensive to a reasonable person." (*Id.* ¶ 68.) Defendants challenge this conclusion, claiming that Adler has no privacy interest in his fax machine, paper, or toner, and that he has waived such an interest, if any, by leaving his fax machine on. (Reply at 8.)  Plaintiffs maintain that defendants are merely disputing the facts of the case, which have not yet been fully developed and must at this stage be construed in plaintiffs' favor. (Opp'n at 13-14.)  See *Maljack Prods., Inc.*, 52 F.3d at 375.

In *Danai*, the Court of Appeals for the District of Columbia adopted the approach to "intrusion upon seclusion" found in the Restatement (Second) of Torts § 652(B). 862 A.2d at 399. Section 652(B) recognizes that repeated phone calls may in some circumstances constitute an invasion of privacy.  While "there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt . . .[,] when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, . . . his privacy is invaded." Restatement (Second) of Torts, § 652(B) cmt. d; *see also id.* cmt. b, illus. 5 (telephone calls made at meal times, late at night, and at other inconvenient times, every day for a month, after a request to desist, would constitute intrusion upon seclusion).  Likewise, in extreme circumstances, sending unauthorized fax advertisements may be an intrusion upon seclusion. *See generally Int'l Sci. & Tech. Inst. v. Inacom Commc'ns*, 106 F.3d 1146, 1150 (4th Cir. 1997) (discussing legislative history of TCPA, which states that TCPA seeks to protect the privacy interests of residential telephone subscribers by restricting unsolicited phone and fax calls); *see*

*also Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881-82 (8th Cir. 2005) (unsolicited faxes were an "injury" within the meaning of an insurance contract because they invaded insured's privacy); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649, 657 n.5 (8th Cir. 2003) ("Artificial or prerecorded messages, like a faxed advertisement, were believed [by Congress] to have heightened intrusiveness because they are unable to 'interact with the customer except in preprogrammed ways.'") (quoting S. Rep. No. 102-178, at 4-5 (1991)), *as reprinted in* 1991 U.S.C.C.A.N. 1968, 1972.  Although Adler may have difficulty proving that defendants' faxes were a frequent enough intrusion to be highly offensive to a reasonable person, the Court cannot at this stage conclude that his claim must be dismissed.[11]

## CONCLUSION

For the reasons stated above, the Court will dismiss Counts II, III, and IV, but Counts I and V will remain.  A separate Order accompanies this Memorandum Opinion.

                                                                                                     s/
                                   ELLEN SEGAL HUVELLE
                                   United States District Judge

Date:   October 17, 2005

---

[11] Defendants' argument that Adler should have turned off his fax machine does not persuade the Court that his claim should fail. Adler presumably left his machine on in order to receive faxes from parties to whom he had given express permission to contact him.  When faced with repeated, hounding telephone calls, a person would not waive a privacy claim by failing to take his phone off the hook.  Similarly, the Court is unwilling to impose an obligation on Adler to turn off his fax machine.